```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


S.K. VARMA,                      )
                                 )
     Plaintiff,                  )
                                 )
          v.                     )     1:06cv421 (JCC)
                                 )
JONATHAN DUDAS,                  )
     Director, United States     )
     Patent and Trademark        )
     Office,                     )
     Defendant.                  )
                                 )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant's motion for summary judgment. For the following reasons, the Court will grant Defendant's motion in full.

### I. Background

This case arises out of a failure to promote and the subsequent removal of a patent examiner at the United States Patent and Trademark Office ("USPTO"). Plaintiff S.K. Varma alleges that she was the subject of age discrimination and retaliation by her supervisors during her tenure as a patent examiner at the USPTO. Plaintiff also appeals the decision of the Merit Systems Protection Board ("MSPB").

Plaintiff Varma, born on August 15, 1944, served as a patent examiner at the USPTO from 1999 until 2002. Plaintiff has

a Bachelor of Science in physics, chemistry and mathematics from Saugar University; Master's Degrees in physics from Jabalpur and Bristol Universities; and a Doctorate in physics from the University of Utah.  With these credentials, Plaintiff secured a position at the USPTO examining patent applications in the field of mechanical engineering, specializing in catalytic converters.

During her employment at the USPTO, Plaintiff experienced three different supervisors.  Under her first supervisor, Plaintiff states that she observed what she perceived to be a significant preference for younger employees since they were more easily controlled than older employees.  Plaintiff felt that this preference was prevalent among supervisors throughout the USPTO.  Plaintiff contacted the Equal Employment Opportunity ("EEO") Office about this discriminatory treatment, but claims the office discouraged her from filing a complaint.  Plaintiff complained to another supervisor, Denise Ferensic, and was instructed to speak with other supervisors to see if she could work with someone else.

Plaintiff met with a director, Ethel Rollins-Cross, who recommended a new supervisor, and transferred Plaintiff to the unit supervised by Jeanette Chapman ("Chapman").  Contrary to usual procedure, Chapman was given no option of whether to accept Plaintiff in her unit and was told by Rollins-Cross that she

could not fire Plaintiff.[1]  Rollins-Cross denies any such instruction.

Plaintiff also had a poor working relationship with her new supervisor.  Chapman contends Varma performed at an unacceptable level during her time as her supervisor, yet, to the contrary, Plaintiff's evaluations reflect adequate levels of production and comments by Chapman such as "great job."  *Compare* (Pltf.'s Opp., Ex. 7,8) *with* (Pltf.'s Opp., Ex. 9).  Plaintiff alleges that, despite her successful performance, she failed to receive a promotion equivalent to other similarly-situated employees.  After months of delay and her continually asserting her right to a promotion, Plaintiff received a promotion from GS-11 to GS-12.

Plaintiff further alleges several other instances of mistreatment, including: (1) denial of opportunity to receive advanced training from a "primary examiner"; (2) denial of a merit-based award that she had earned until filing a complaint; and (3) being improperly charged with errors in her work by Chapman.  Plaintiff sought assistance from Pamela Schwartz ("Schwartz"), a primary patent examiner and union representative, who noticed that errors were incorrectly being attributed to Varma.  (Pltf.'s Opp., Ex. 11).  She also noticed that "Ms.

---

[1] Plaintiff also claims that she should have been able to seek out a specific new supervisor rather than being assigned to a new supervisor by Rollins-Cross.

Chapman would say that [Plaintiff] was making good progress, and then she would cite an outrageous error rate." *Id.* A few months later, Plaintiff was improperly charged by Chapman for being Absent Without Leave (AWOL) when she was away on a work-related trip. On July 11, 2001, the union filed a grievance against Chapman, who was subsequently transferred and demoted.

In October 2001, Plaintiff received her second yearly performance evaluation, this time as a GS-12 patent examiner, and received an overall rating of "Fully Successful" (Pltf.'s Opp., Ex. 13). Soon after, Paul Sewell ("Sewell") replaced Chapman as Plaintiff's supervisor, sparking the beginning of what apparently was a bitter and difficult employment relationship. Despite receiving satisfactory evaluations under previous supervisors, Varma's evaluations soon reflected a purely incompetent, unsatisfactory employee, and the relationship between Sewell and Varma suffered.

First, Varma was attributed with error rates (*e.g.*, 37%, 22%, and 32%) that vastly exceeded the maximum acceptable level (7%) over the following months. Plaintiff received an oral warning about her performance, and she sought relief by complaining to again to Schwartz, who advised Plaintiff not to file a grievance so soon after receiving a new supervisor and further told Plaintiff that Sewell has a reputation for competence.

Second, Plaintiff sought workers' compensation after being hurt on the job, and Sewell refused to sign the proper documentation so that she could receive the compensation. Varma sought relief by contacting officials in the USPTO's workers' compensation program, who then informed Sewell that he must sign the paperwork. (Pltf.'s Opp., Ex. 19).

Third, Plaintiff received a written warning from Sewell on April 2, 2002 based upon the high error rate in her work. In response, Varma filed another grievance and sought assistance of an employee assistance counselor. Additionally, she also complained to the Office of Civil Rights, wrote a letter to Rollins-Cross regarding Sewell's hostility, and sought EEO counseling about Sewell's treatment of her. On May 7, 2002, Plaintiff filed a formal complaint with the EEOC. A few months later, on August 6, her termination was proposed by Rollins-Cross and Sewell to Deputy Commissioner Esther Kepplinger, who then conducted a thorough investigation. On October 16, 2002, Plaintiff was removed from her position as a patent examiner.

Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Specifically, Plaintiff claims that: (1) Defendant discriminated against her on the basis of her age in violation of the ADEA by failing to promote her to GS-13 and terminating her employment;  (2) Defendant retaliated against

Plaintiff in violation of Title VII by failing to promote her to GS-12 and terminating her employment; and (3) the Merit Systems Protection Board committed grave procedural error that resulted in prejudice.  Defendant has moved for summary judgment of all claims, and this motion is currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The process for litigating discrimination claims is well-established.  Since there is rarely direct evidence of discrimination, the Supreme Court has provided the burden-shifting *McDonnell Douglas* framework when the claim is based upon circumstantial evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-805 (1973).  Under that framework, to avert summary

judgment, the plaintiff must first establish a *prima facie* case of discrimination. 411 U.S. at 802. Next, once the plaintiff has satisfied the requirements of a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Williams v. Staples, Inc.* 372 F.3d 662, 667 (4th Cir. 2004). If the defendant shows a legitimate, non-discriminatory reason for its actions, the burden then shifts back to the plaintiff to come forward with sufficient evidence that a jury could reasonably find that the defendant's asserted reasons are a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

### III. Analysis

Defendant has moved for summary judgment on all claims by Plaintiff. The Court will first address the discrimination and retaliation claims as they pertain to the non-promotion of Plaintiff, and second as they pertain to the removal of the Plaintiff. Finally, the Court will review Plaintiff's appeal of the administrative decision affirming her removal.

#### A. Defendant's Failure to Promote Plaintiff to GS-13

Defendant argues that Plaintiff's request for relief under Title VII and the ADEA for the failure to promote Plaintiff is time-barred, and thus, summary judgment is proper. In her opposition and also at oral argument, Plaintiff provided no

argument to the contrary.  Nevertheless, this Court will provide its analysis in addressing these claims.

First, under Title VII, a federal employee is required to exhaust her administrative remedies as a precondition to filing suit in federal court.  42 U.S.C. § 2000e-16(c) (2000); 29 C.F.R. § 1614.407 (2006); *Webster v. Johnson*, 126 Fed. Appx. 583 (4th Cir. 2005).  To exhaust such remedies, the employee must contact an EEO counselor with her complaint within forty-five days of the alleged discriminatory event.  29 C.F.R. § 1614.105(a)(1) (2006).

With regard to Defendant's failure to promote the Plaintiff, the alleged discriminatory event occurred on January 14, 2001.  In her deposition, Plaintiff admitted that she had not contacted any EEO counselor within forty-five days of this date.  (Def.'s Mot, Ex. 6, p.143)  Thus, Plaintiff's administrative remedies were not exhausted, and her Title VII claim is barred with respect to the failure to promote her.

Next, under the ADEA, a federal employee has two options when pursuing a claim:  First, she can contact an EEO counselor within forty-five days and exhaust the EEO process, just like the Title VII plaintiff (which did not occur in this case as stated above).  *See* 29 C.F.R. § 104, *et. seq.*; Alternatively, the ADEA plaintiff can proceed directly to district court if she provides the EEOC with written notice of

her intent to sue within 180 days of the alleged discriminatory act.  29 C.F.R. § 1614.201(a).

Again, in her deposition, Plaintiff admitted that she did not provide notice of her intent to sue to the EEOC within 180 days of January 14, 2001.  (Def.'s Mot., Ex. 6 at p.147). Plaintiff therefore has not met the procedural requirements under the ADEA and her claim regarding her non-promotion is barred.  As such, summary judgment must be entered for Defendant on Plaintiff's Title VII and ADEA claims arising out of her non-promotion.  Therefore, the remaining claims before the Court are regarding Plaintiff's removal and whether this action was an act of discrimination or retaliation in violation of the ADEA and Title VII respectively; and whether the Administrative Board's decision should be reversed.

### B.  Plaintiff's ADEA Claim Based upon Her Removal

The ADEA was enacted to promote employment of older persons based on their ability and to prohibit any employer to discharge, or otherwise discriminate, against any individual on the basis of age.  29 U.S.C. §§ 621, 623 (2005).

Since Plaintiff has provided no direct evidence of age discrimination, the Court will proceed under the *McDonnell Douglas* framework.  First, the Court must analyze whether Plaintiff has shown a *prima facie* case of unlawful age discrimination, the elements of which are (1) she is a member of

9

the protected class; (2) she was qualified for the job and met the legitimate expectations of her employer; (3) she was terminated despite these qualifications; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Warch v. Ohio Cas. Ins. Co.*, 435 F.2d 510, 513 (4th Cir. 2006).

The first, third, and fourth elements are not contested by the Defendant. Only the second element remains in dispute, which strikes to the core of this case: whether Plaintiff met the expectations of her employer. The Court is troubled by the fact that Plaintiff received positive evaluations under the supervision of Ms. Chapman,[2] and that her performance dramatically declined once under the supervision of Mr. Sewell. Nevertheless, the crucial issue is this: Plaintiff was terminated for the outrageously high error rates with which she was charged during the time period under the supervision of Sewell (her last supervisor), yet Plaintiff has provided no evidence that these errors were improperly charged.[3] Sewell charged her with these errors after reviewing her work. Director Rollins-Cross reviewed these errors and proposed Plaintiff's

---

[2] To the contrary, Chapman's affidavit and deposition indicate that Varma was an incompetent employee.

[3] At oral argument, the Court asked Plaintiff to produce evidence that these errors were improperly charged to Plaintiff. Plaintiff responded only with reference to exhibits of her own testimony of why she should not have been charged with the errors.

10

removal. Finally, Esther Kepplinger, Deputy Commissioner for Patent Operations, conducted an independent investigation including the patent applications in which Plaintiff was charged with error as well as Plaintiff's oral response to the proposed removal. After thorough consideration of the relevant material, Deputy Commissioner Kepplinger made the decision to remove plaintiff from service.

This Court cannot state that Plaintiff met the legitimate expectations of her employer when three levels of management reviewed Plaintiff's work and found unacceptable error, especially in light of no credible evidence to the contrary. Accordingly, Plaintiff has not demonstrated a *prima facie* case of age discrimination, and thus, summary judgment for Defendant is proper.

Even if Plaintiff sufficiently demonstrated a *prima facie* case, Defendant has articulated a legitimate, non-discriminatory reason for its actions thereby satisfying the second step to the *McDonnell Douglas* framework by stating that her job performance was unacceptable. Plaintiff has not provided sufficient evidence such that a jury could find that this reason is pretextual. Again, Plaintiff was terminated after thorough review by several levels of management due to unacceptable performance, and she has not provided any credible evidence that she was improperly charged with errors. A reasonable jury could

not find that Defendant's reason for firing her was a pretext for age discrimination and no material dispute of fact exists as to whether Plaintiff was the subject of age discrimination. Accordingly, summary judgment for Defendant is appropriate.

### C.  **Plaintiff's Title VII Claim Based upon Her Removal.**

Plaintiff also asserts under Title VII that her removal was an act of retaliation for engaging in the protected activities. Again, proceeding under the first step of *McDonnell Douglas*, Plaintiff must prove three elements to establish a *prima facie* case of retaliation: (1) that she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that there is a causal link between the protected activity and the adverse employment action. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).

Defendant does not dispute the first and second prongs, but only contests that there was no causality between Plaintiff's engaging in protected activity and her removal. Defendant argues that causality cannot be established since she was removed on October 16, 2002, over five months after she engaged in the protected activity of filing the EEO Complaint on May 7, 2002.

Plaintiff argues this contention fails to account for the fact that she repeatedly engaged in protected activity throughout her tenure at the USPTO, and her supervisors established a pattern of retaliation following each complaint.

12

The fatal flaw in this argument is that Plaintiff did not plead these "individual instances" of alleged retaliation, but instead pled only that the October 16, 2002 removal was the act of retaliation.[4] Therefore, the issue before the Court is not whether these "individual instances" constituted acts of retaliation, but only whether Plaintiff's firing was an act of retaliation. The Court thus will proceed in analyzing whether there is sufficient nexus to establish a causal connection between the EEO filing of May 7 and the subsequent firing of October 16.

Temporal proximity is clearly relevant in the determination of whether a causal connection exists, and sometimes, is sufficient alone to satisfy this element of a *prima facie* case of retaliation. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In the case at bar, five months lapsed between the protected activity and the discharge--too long to establish causality alone. *See Shield v. Fed. Express Corp.,* 120 Fed. Appx. 956, 963 (4th Cir. 2005). However, it is important to note that only three months after the EEOC complaint was filed, on August 6, 2002, Director Rollins-Cross had reached the decision that Plaintiff should be removed and proposed her

---

[4]Plaintiff did plead that her non-promotion was an act of retaliation, but as this Court has already decided, Plaintiff did not satisfy the necessary preconditions as to this claim.

13

termination, which was delivered and signed by Plaintiff on that same day.

Although Plaintiff was not removed for another two months, this fact strengthens causal connection between the protected activity and the discharge since the proposal to remove was three, not five, months after her EEOC filing. Furthermore, temporal proximity is only one factor when inquiring into causality. The inquiry into the element of causation is highly context specific. *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997). Both before and after Plaintiff's filing a complaint with the EEOC, a considerably hostile relationship existed between Plaintiff and her supervisor. On different occasions, grievances were filed, warnings were distributed, superiors were contacted, counselors were approached, and signatures were refused. This hostile environment is highly probative of a retaliatory context, and sufficiently strengthens the causal connection between Plaintiff's EEOC filing and her subsequent removal.

Upon consideration of the hostile context of her employment and the fact that Rollins-Cross's termination decision came only three months after the filing of her EEOC, this Court finds that the causal connection has been established and Plaintiff has demonstrated a *prima facie* case of discrimination.

Nevertheless, Plaintiff fails to avert summary judgment under the remaining steps of the *McDonnell Douglas* framework. Defendant has provided the legitimate, non-retaliatory reason for terminating Plaintiff due to her unacceptable level of performance, as provided under the ADEA analysis. Again, as stated above, Plaintiff has not provided any credible evidence that the errors in her work were improperly charged. Without at least some credible evidence to dispute the unanimous conclusion of the numerous levels of review by the USPTO, a reasonable jury could not find that Defendant's reasons for terminating Plaintiff are a pretext for retaliation. Accordingly, no dispute of material fact exists as to whether Plaintiff was the subject of retaliation, and therefore, summary judgment is proper as to her Title VII claim of retaliation.

### D. Plaintiff's Appeal of the Merit Systems Protection Board

Plaintiff also appeals the decision of the MSPB to affirm her removal. The scope of this Court's review is limited to determining whether the MSPB's decision was (1) arbitrary and capricious; (2) obtained without necessary procedures; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Plaintiff only argues that the Administrative Judge committed procedural error by denying her the ability to call relevant witnesses. Specifically, Plaintiff was denied the opportunity to provide the testimony of Chapman to attempt to establish that

Varma performed her job successfully during time periods outside the scope of that at issue before the MSPB (*i.e.,* during the "pre-Sewell" supervision).  Although this Court disagrees with the Administrative Judge's decision to exclude this testimony as irrelevant, this Court does not find this decision to be outside the significantly broad discretion to determine which witnesses should be permitted to testify.  *Veneziano v. Dep't of Energy*, 189 F.3d 1363, 1369 (Fed. Cir. 1999).  Therefore, no abuse of discretion occurred, and the MSPB decision is affirmed.

### IV.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted in full.

An appropriate Order will issue.

January 24, 2007                     _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                     UNITED STATES DISTRICT COURT JUDGE